UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEMETRIS NICHOLSON,

    Petitioner,

v.                                                  Case No. 1:10-cv-13801-BC
                                                Honorable Thomas L. Ludington

CARMEN PALMER,

    Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

Petitioner Demetris Nicholson initiated this case pursuant to 28 U.S.C. § 2254. Petitioner is currently incarcerated with the Michigan Department of Corrections and housed at the Richard A. Handlon Correctional Facility in Ionia, Michigan. He is serving concurrent sentences of twelve to thirty years on three counts of third-degree criminal sexual conduct. Petitioner was convicted following a bench trial in Michigan's Wayne County Circuit Court on December 1, 2008, and he was sentenced on December 15, 2008 as a habitual offender. Petitioner was on parole at the time of these offenses.

On September 23, 2010, Petitioner, proceeding *pro se*, filed this habeas petition challenging the constitutionality of his convictions. He raises claims concerning the sufficiency of the evidence against him and his eventual sentencing. But because Petitioner's convictions and sentences are constitutionally sound, his petition will be denied. The Court will not issue a certificate of appealability, nor will it grant Petitioner leave to proceed *in forma pauperis* on appeal.

# I

Petitioner was originally charged with three counts of criminal sexual conduct in the first-degree, three counts of criminal sexual conduct in the third-degree, assault with intent to rob while unarmed (dismissed at the preliminary examination), and assault with a dangerous weapon. The complainant in this case, Melissa Ann Floyd, alleged that on April 11, 2008, Petitioner assaulted her, threatened her, and then raped her. Petitioner denied the allegations, arguing that the two engaged in consensual sex. Both Floyd and Petitioner testified during the bench trial, as did other witnesses who were with them on the night in question—Mary Jenkins, Jackie Arnold, Connie Wright, and Charles White. Petitioner's bench trial began on November 6, 2008, but was adjourned in an effort to obtain DNA results. Trial reconvened on November 24, 2008 (after Petitioner waived the results of the DNA analysis) and ended on December 1, 2008. The following trial testimony is relevant to the petition.

Floyd testified that on the night in question, she was with her friends—Jenkins and Arnold—at a bar in Detroit, Michigan. She said she consumed about two to three drinks. (White would later testify that she appeared drunk.)

Floyd said she met Petitioner for the first time that night. She testified that she stayed to herself and did not interact or flirt with anyone at the bar, but Arnold testified otherwise; that Floyd was dancing, talking to other girls' boyfriends, and flirting with Petitioner. Arnold's testimony was corroborated by the other witnesses' testimony. Wright testified that Floyd was dancing and acting provocative with several guys. Jenkins testified that she was sitting on Petitioner's lap—hugging and kissing him. White testified likewise.

The group left the bar around midnight. Floyd was standing alone outside the bar while the others went to get the car. When the car pulled up, Jenkins, Arnold, White, Petitioner, and

another man were in the car. Floyd was told to sit in the back seat, on Petitioner's lap, which she did.

Subsequently, two unknown women approached the car and dragged Floyd out of the car by her hair. According to Floyd, while the women stomped on her and punched her, the car drove off. She said the women eventually stopped. She then went into the bar to get some help. Contrary to Floyd's testimony, Jenkins, Wright, White, and Petitioner all testified that they pulled the two women off of Floyd. The owner of the bar did not recall any disturbances that night.

Regardless, at some point Petitioner told Floyd to get back into the car, and she did. The group drove to a restaurant and everyone got out except Petitioner and Floyd. Floyd testified that Petitioner was slapping her and telling her that if she tried to get out he would kill her. Floyd also claimed that when the others returned to the car, she told Jenkins what had happened, but Jenkins did not respond. Jenkins testified that Floyd never said anything about Petitioner assaulting her.

The group then drove to White's house in Detroit. Again, everyone got out of the car except Floyd and Petitioner. Floyd testified that Petitioner once again threatened that if she got out of car he would kill her; she said he slapped her and pulled her hair. He told her that because he paid for her drink at the bar, she would have to pay him back or "suck his [penis]." Trial Tr. vol. I, 27, Nov. 6, 2008, ECF No. 8–4. According to Floyd, Petitioner then unbuttoned his pants and pulled out his penis, and she performed fellatio on him. Petitioner then told Floyd to take off her pants. She did, and he put his finger in her anus. Floyd testified that meanwhile, Petitioner continued to slap her, pull her hair, and threaten her. He hit her in the head with something black and heavy, which she believed was a gun. Petitioner then pulled Floyd out of car, took her to the

-3-

side of White's house, and told her to pull down her pants and bend over. He inserted his penis into her vagina and soon ejaculated. Afterward, he went into the house.

Floyd ran from the house and flagged down a police car. She told them what had happened and of Petitioner's location. An ambulance was called and she was taken to the hospital. The police went to the house and arrested Petitioner.

Petitioner testified that Jenkins introduced him to Floyd that night. They spent about an hour together at the bar. They were dancing, hugging, and kissing. He also said she was mingling with other guys as well. Petitioner said Floyd chose to sit on his lap when they got into the car. He said she wanted to have sex with him and he complied; she performed oral sex on him in the car and they had sex on the back porch. He denied putting his finger in her anus. The trial judge convicted Petitioner as stated and sentenced him as described.

Following his sentencing, Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, raising the same claims raised in this habeas petition. The Court of Appeals denied the delayed application. *People v. Nicholson*, No. 294391 (Mich. Ct. App. Jan. 21, 2010) (unpublished). Petitioner subsequently filed an application for leave to appeal with the Michigan Supreme Court. On June 28, 2010, the Michigan Supreme Court denied the application. *People v. Nicholson*, 783 N.W.2d 355 (Mich. 2010) (unpublished table decision).

Petitioner neither filed a post-conviction motion with the state court nor a petition for a writ of certiorari with the United States Supreme Court. Rather, he filed this habeas petition.

## II

### A

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when

considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, section 2254(d) permits a federal court to issue the writ only if the state-court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)–(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, "the state court's [application of federal law must have been] objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.
>
> * * *
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405–06. The Supreme Court has held that a federal court should analyze a claim for habeas-corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Supreme Court has also explained that an unreasonable application of federal law is different from an incorrect application of federal law.

Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The Supreme Court has continued to emphasize, however, the limited nature of this review. In *Harrington v. Richter*, 131 S. Ct. 770 (2011), the Supreme Court reiterated that the AEDPA requires federal habeas courts to review state-court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 785–86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Additionally, this Court must presume that the state court's factual determinations are correct. 28 U.S.C. § 2254(e)(1) (a determination of a factual issue made by a state court shall be presumed to be correct); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (citation omitted) (finding that the court gives complete deference to state court findings of historical fact unless they are clearly erroneous). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Further, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

**B**

Petitioner first claims that there was insufficient evidence to support his convictions for criminal sexual conduct in the third-degree. Specifically, he argues that the evidence was insufficient to prove the essential element of force or coercion beyond a reasonable doubt.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, analysis of a sufficiency of the evidence challenge must focus on whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original) (citation omitted). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. The *Jackson* standard applies to bench trials as well as to jury trials. *See*, *e.g.*, *United States v. Bronzino*, 598 F.3d 276, 278 (6th Cir. 2010).

The Supreme Court recently characterized this standard as requiring a defendant to show that the verdict "was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012). Under AEDPA, the standard is even more difficult for a petitioner to meet. This is because "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* at 2062 (citations omitted).

Finally, on habeas review, a federal court does not weigh the evidence or determine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Rather, it is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992); *see also Butzman v. United States*, 205 F.2d 343, 349 (6th Cir. 1953) (in a bench trial credibility of witnesses is a question for the trial judge). A habeas court therefore must defer to the factfinder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). The Court does not apply the reasonable-doubt standard when

determining the sufficiency of evidence on habeas review. *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

Under Michigan law, to prove criminal sexual conduct in the third-degree, the prosecution must prove that the defendant used force or coercion to accomplish the sexual penetration. MICH. COMP. LAWS § 750.520d(1)(b). "[T]he prohibited 'force' encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes." *People v. Carlson*, 644 N.W.2d 704, 709 (Mich. 2002).

Petitioner claims that the evidence was insufficient because Floyd's testimony was not believable or corroborated. The fact that a victim's testimony is uncorroborated does not render the evidence insufficient. The testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction, so long as the prosecution presents evidence which establishes the elements of the offense beyond a reasonable doubt. *Brown v. Davis*, 752 F.2d 1142, 1144–45 (6th Cir. 1985). Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is generally beyond the scope of federal-habeas review. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000). Rather, the mere existence of sufficient evidence to convict defeats a petitioner's claim. *Id.* Moreover, the testimony of a sexual-assault victim alone is sufficient to support a defendant's sexual-assault conviction. *See United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (citation omitted).

In this case, the trial judge found that the victim's testimony alone was sufficient to sustain Petitioner's conviction. The judge stated:

> The Court finds Miss Floyd's testimony to be more credible and, no, I don't find that she's the perfect witness. I mean, everybody including the victim in this case has their issues. There's no question about that, but that's not for this Court to consider, but this Court has to consider the veracity of both Miss Floyd and Mr. Nicholson and the Court finds in Count I that, first, the Defendant did engage in the sexual act that did involve fellatio with Miss Floyd and that the People have proved beyond a reasonable doubt that that act occurred and, again, the testimony of the victim, Miss Floyd, was that he forced her to perform oral sex on him while pulling her hair and smacking her about the face.
>
> * * *
>
> Count II, . . . the Court finds that the prosecution has proven beyond a reasonable doubt, first, that the Defendant, Mr. Nicholson, engaged in the sexual act that involved entry into Miss Floyd's anal opening. Again, entry no matter how slight is enough.
>
> * * *
>
> The record is — or demonstrates that the victim, Miss Floyd, was pulled out of the car leaving her shoes behind, forced up against the wall of the home and forced to pull her pants down and engage in sexual intercourse with the Defendant, in the meantime while being assaulted by the Defendant.
>
> The Court finds the Defendant forced himself upon the alleged victim, Miss Floyd, and that the sex was not consensual. Again, with respect to this count, the Court does not find the Defendant's testimony to be believable, but rather the victim's testimony to be more believable.

Trial Tr. vol. VI, 51–53 Dec. 1, 2008, ECF No. 8–9.

Taken as a whole, the evidence at trial and the factfinder's reasonable inferences were sufficient to reasonably find—beyond a reasonable doubt—that the sexual assaults occurred. Petitioner, therefore, is not entitled to habeas relief on this claim.

### C

In his second habeas claim, Petitioner contends that the trial judge incorrectly scored the sentencing guidelines. Specifically, he argues that the judge improperly scored fifteen points for Offense Variable 8 (OV 8), "Victim Asportation or Captivity," which resulted in a sentence that

was disproportional and in violation of his right to due process.

With respect to the scoring of the guidelines, Petitioner's claim is not cognizable on habeas review. A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas-corpus proceedings. Federal-habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). Thus, Petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

Petitioner's claim that his sentence was wrongly based on inaccurate and incomplete information also fails to state a cognizable claim in a federal-habeas proceeding.

A sentence may violate due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *see also United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have a meaningful opportunity to rebut contested information at sentencing). To prevail on such a claim, a petitioner must show that the trial judge relied on materially false information. *See United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). Here, the testimony of the victim supports a finding that she was transported in a vehicle from a club, to a restaurant, and then to a home, during the course of the crimes. Petitioner's argument fails and he is not entitled to relief with respect to this claim.

Finally, to the extent that Petitioner asserts that his sentence is disproportionate under the Eighth Amendment, his argument also fails. The United States Constitution does not require strict proportionality between a crime and its punishment. *See Harmelin v. Michigan*, 501 U.S.

957, 965 (1991); *see also Graham v. Florida*, 130 S. Ct. 2011, 2021–22 (2010) (recognizing that punishment for a crime should be graduated and proportioned to the offense). The Sixth Circuit follows *Harmelin*'s narrow proportionality principle. *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2010) (citation omitted). "Consequently, only extreme disparity between crime and sentence offends the Eighth Amendment." *Id.* The Sixth Circuit also has held that it simply "will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).

Moreover, a sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (internal citation omitted). Petitioner was sentenced as a habitual offender, third offense. His sentences are within the statutory maximums for his offenses, as criminal sexual conduct in the third degree is a felony punishable by imprisonment for not more than fifteen years. MICH. COMP. LAWS 750.520d(2). The state court thus acted within its discretion in imposing Petitioner's sentences and there is no extreme disparity between his crimes and sentences so as to offend the Eighth Amendment. Habeas relief is not warranted.

### D

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See*

*Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336–37.

Petitioner has not made a substantial showing of the denial of a constitutional right, and thus, a certificate of appealability is not warranted. Further, even though Petitioner was granted *in forma pauperis* status in this Court, leave to proceed *in forma pauperis* on appeal is denied as any appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

### III

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus, ECF No. 1, is **DENIED**.

It is further **ORDERED** that the Court **DECLINES** to issue a certificate of appealability.

It is further **ORDERED** that the Court **DECLINES** to grant Petitioner *in forma pauperis* status on appeal.

Dated: July 19, 2013                                         s/Thomas L. Ludington
                                                             THOMAS L. LUDINGTON
                                                             United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail, and upon Demetris Nicholson #343735, Handlon Michigan Training Unit, 1728 Bluewater Highway, Ionia, MI 48846 by first class U.S. mail on July 19, 2013.

                    s/Tracy A. Jacobs
                    TRACY A. JACOBS